■ Charles Pascal et al., Plaintiffs, v Nova Casualty Company, Defendant. (Matter No. 1.) In the Matter of Eric Kurtzman, Appellant, v Nova Casualty Company et al., Respondents. (Matter No. 2.) [641 NYS2d 696] —In an action, *inter alia,* for reformation of an insurance policy (Matter No. 1) and a special proceeding pursuant to CPLR 5225 (b) for a determination that certain insurance proceeds are available to satisfy judgments against Beckwith Moving & Storage, Inc. (Matter No. 2), the appeal is from an order and judgment (one paper) of the Supreme Court, Orange County (Owen, J.), entered July 29, 1994, which, *inter alia,* dismissed the petition in Matter No. 2 and ordered the escrow agent to remit the insurance proceeds to Charles Pascal and David Demarest.

Ordered that the order and judgment is reversed, on the law, with costs, and the petition is granted.

Charles Pascal and David Demarest are the owners of a commercial warehouse. They are also the sole shareholders of Beckwith Moving & Storage, Inc. (hereinafter Beckwith), a corporation which leased the warehouse. Nova Casualty Company

(hereinafter Nova) issued a policy insuring the building for loss due to fire. The policy, procured by and paid for by Beckwith, named Beckwith, and not Pascal and Demarest, as insureds.

In June 1990 a fire destroyed the warehouse. Nova initially disclaimed coverage due to its concerns that the fire was the result of arson. Accordingly, Beckwith commenced Matter No. 1 against Nova to recover the proceeds of the insurance policy. However, allegedly for the first time during the trial in Matter No. 1, Nova learned that a mistake had led to the designation of the wrong party as the insured. Accordingly, the parties, with the court's consent, stipulated to the reformation of the insurance policy to name Pascal and Demarest as the insureds. Matter No. 1 concluded with a $250,000 verdict in favor of Pascal and Demarest under the reformed policy.

By the instant special proceeding (Matter No. 2), the appellant as trustee in bankruptcy for Beckwith, and apparently on behalf of approximately 15 judgment creditors or lienors of Beckwith, sought to reach the insurance proceeds which, but for the reformation of the insurance policy, would have been paid to Beckwith and which then would have been available to satisfy outstanding judgments. The Supreme Court dismissed the petition in Matter No. 2 after a trial, concluding that Pascal and Demarest possessed the only genuine insurable interest in the warehouse which they and not Beckwith, owned, and that but for a mutual mistake Nova would have written the insurance policy naming Pascal and Demarest as the named insureds. The court therefore directed the escrowee to release the proceeds of the judgment in Matter No. 1, which had been held in escrow pending the outcome of Matter No. 2. We now reverse.

Standing alone, the reformation of the insurance policy so as to substitute Pascal and Demarest as insureds in place of Beckwith might have been unobjectionable if the reformation was necessitated by a genuine mutual mistake as to the identity of the actual insureds (*see, Court Tobacco Stores v Great E. Ins. Co.*, 43 AD2d 561). However, we find that the instant appeal does not present a genuine case of mutual mistake.

The evidence adduced at trial overwhelmingly demonstrated that Pascal and Demarest were not hampered by a mutual mistake as between insurer and insured, as to the correct identity of the insured. Clearly Pascal and Demarest knew that they, and not Beckwith, owned the warehouse. Indeed, David Demarest testified that Beckwith was listed as the named insured because "[e]verything we did was through Beckwith Moving and Storage". Clearly, Beckwith was intention-

ally identified as the insured because it was consistent with the business practices of Pascal and Demarest, not because of any legitimate mutual mistake (cf., *Court Tobacco Stores v Great E. Ins. Co., supra*).

The policy between Beckwith and Nova was just one of a series of policies introduced into evidence, written by other insurers for the warehouse during the 1980s. All of these policies identify Beckwith as the insured. Several were written to cover the warehouse building, office contents, warehouse contents, and Beckwith's "gross earnings less ordinary payroll". Moreover, Demarest admitted at trial that pursuant to one of these policies a claim for fire loss was paid to Beckwith in 1987 and that the insurance proceeds, in excess of $15,000, were used to repair the warehouse building. Beckwith's former accountant also testified that Pascal and Demarest knew that they were the true owners of the warehouse. Accordingly, the evidence leaves no doubt that Pascal and Demarest did not mistakenly identify Beckwith as the insured. Thus, there was no mutual mistake.

The court also erred insofar as it concluded that Beckwith had no insurable interest in the Warehouse. As noted, Beckwith collected on a previous claim for loss due to fire. Nova's Assistant Vice President in charge of commercial lines underwriting acknowledged that a tenant may have an insurable interest in a commercial, leased building. It also warrants emphasis that Nova failed to raise any objections that Beckwith lacked a legitimate insurable interest in the warehouse and it never disclaimed coverage on this basis. In short, the record convincingly demonstrates that Beckwith possessed a documented insurable interest in the warehouse, and that its policy with Nova was not the result of mutual mistake. Therefore, the court erred in approving the reformation of the policy.

In any event, even if the reformation might have been otherwise appropriate, where as here, a corporate judgment debtor divests itself of a viable and valuable asset in favor of its only shareholders, for no consideration, the transaction constitutes a fraudulent transfer as against creditors of the corporation (*see, Butera v Willow Woods*, 210 AD2d 279; *Matter of Kalati v Independent Diamond Brokers*, 209 AD2d 412; *Matter of Superior Leather Co. v Lipman Split Co.*, 116 AD2d 796).

It is not contested that Beckwith effectively conveyed the insurance proceeds it would have recovered to Pascal and Demarest, for no consideration. It is further uncontroverted that the appellant, a trustee in bankruptcy, represented the

interests of legitimate judgment creditors of Beckwith. The transaction entered into in open court, between Beckwith, Nova, and Pascal and Demarest, pursuant to which Pascal and Demarest, rather than Beckwith, would receive any recovery in Matter No. 1, was, in effect, an assignment of Beckwith's rights in the insurance policy to them.

Pursuant to Debtor and Creditor Law § 273-a, every conveyance made by a defendant without fair consideration, when the defendant has a judgment docketed against it, is fraudulent as to the plaintiff, without regard to actual intent, if the defendant fails to satisfy the judgment (*see, Barnett v Bell,* 213 AD2d 276; *Matter of Fill v Fill,* 82 Bankr 200). Beckwith did in fact fail to satisfy the judgments it owed to the judgment creditors (*see, Durrant v Kelly,* 186 AD2d 237), and an assignment is a conveyance (Debtor and Creditor Law § 270). Therefore, by the plain meaning of the Debtor and Creditor Law, the conveyance was fraudulent *(see, Butera v Willow Woods, supra; Matter of Kalati v Independent Diamond Brokers, supra; Matter of Superior Leather Co. v Lipman Split Co., supra).* Accordingly, the insurance proceeds should have been paid to Beckwith so that its creditors might have had the opportunity to pursue appropriate enforcement measures. Mangano, P. J., Miller, Ritter and Hart, JJ., concur.